NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARTINIQUE B. ALLEN,<br><br>        Plaintiff,<br><br>v.<br><br>STATE-OPERATED SCHOOL DISTRICT<br>OF THE CITY OF NEWARK,<br><br>        Defendant. | Civil Action No.: 12-3128 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

## I. INTRODUCTION

Pending before this Court is Defendant State-Operated School District of the City of Newark's ("Defendant") motion to dismiss *pro se* Plaintiff Martinique B. Allen's ("Plaintiff") Complaint. (D.E. No. 8). Plaintiff does not oppose Defendant's motion. The Court decides Defendant's motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons below, Defendant's motion is GRANTED.

## II. BACKGROUND

On May 25, 2012, *pro se* Plaintiff brought this action, seeking to proceed *in forma pauperis*, on behalf of her minor child ("C.A."). (D.E. No. 1 ("Compl.") at 1). Plaintiff alleges "unfair and unjust treatment of a special education student." (*Id.*). Plaintiff does not, however, allege any jurisdictional basis for this action or otherwise reference any statute in her Complaint.

Factually, Plaintiff alleges that her son C.A., a preschool child and Newark resident, was determined to have a disability and that "several members" of Defendant's "child study team"

1

agreed that C.A. "required speech therapy and inclusion services." (*Id.* at 1). Plaintiff contends that "[t]hese services were due to begin on or before 12/22/11," but that "[s]peech therapy didn't begin until late February, while the inclusion services are still not being provided" as of the filing of her Complaint. (*Id.*). Plaintiff does not define "inclusion services," but asserts that these services "were to be performed once a week" and now C.A. has lost a "total [of] 20 . . . sessions of inclusion" and "nine sessions of speech therapy." (*Id.*).

Plaintiff explains that she "placed a series of phone calls to case manager Susan Stienburge, and still no results." (*Id.*). Plaintiff also explains that she "reached out to (SPAN) Statewide Parent Advocacy Network who took [her] info and never responded to [her] phone calls." (*Id.* at 2). Two months later, however, Plaintiff contends that Ms. Stienburge informed her that "they w[ere] short on inclusion instructors." (*Id.*). Plaintiff avers that she was told that, if she "enrolled [C.A.] in aftercare[,] [C.A.'s] chance of receiving inclusion would be greater." (*Id.*). But Plaintiff alleges that she cannot afford such "aftercare" and that this was "never mentioned before." (*Id.*). Plaintiff further alleges that, "[i]n most recent days," Ms. Stienburge told her that C.A. "could receive the inclusion services mised [sic] over the summer <u>if</u> he was enrolled in a summer programe [sic] in Newark." (*Id.* (emphasis in original)). Plaintiff explains that she cannot afford to place C.A. in any such summer program. (*Id.*).

Plaintiff repeatedly alleges financial hardship and asserts that her family has received "no support from" Defendant. (*See, e.g.*, *id.* ("I[']m not a professional, and every day is a struggle.")). As a result, Plaintiff alleges that C.A. "is falling further [and] further behind." (*Id.*). She asserts that her "request [is] of the up most [sic] importance" and that C.A.'s "future is hanging in the balance." (*Id.* at 3). As to relief sought, Plaintiff demands "the services promised to [her and C.A.]," and a "sum of $20,000.00 for breach of contract, pain and suffering." (*Id.*).

In support of her Complaint, Plaintiff provides a "parental notice of eligibility" from the Defendant's "Office of Special Education" showing that C.A. is "eligible for special education and related services"—a "determination [that] was made as the result of an eligibility meeting held on 12/14/11" based on several factors. (*Id.* at 4). This notice provides that C.A. has a "disability" characterized by, among other symptoms, "weaknesses in his expressive language skills" wherein his "vocabulary is depressed []and his speech is often difficult to understand." (*Id.*). Furthermore, this document includes a "statement of special education and related services," which lists "speech therapy" as a "related service[]." (*Id.* at 6). The document is characterized as an "IEP"—or an Individualized Education Program. (*Id.* at 5).

On December 3, 2012, this Court granted Plaintiff's *in forma pauperis* application and ordered the Clerk to file Plaintiff's Complaint without prepayment of the filing fee. (D.E. No. 2). The executed summons filed with this Court indicates that Defendant was served on January 26, 2013. (D.E. No. 6). Defendant then filed the motion to dismiss now at issue. (D.E. No. 8, Defendant's Motion to Dismiss ("Def. Mov. Br.")).

As detailed below, Defendant argues that Plaintiff's Complaint must be dismissed for two reasons: (1) Plaintiff has failed to exhaust administrative remedies before bringing the instant action, as required by the Individuals with Disabilities Education Act (the "IDEA"); and (2) Plaintiff failed to properly effect service under Federal Rules of Civil Procedure 4(m) and 5(b). (Def. Mov. Br. at 3-4). Plaintiff does not oppose Defendant's motion.

## III. LEGAL STANDARD

"In the context of an IDEA claim, the exhaustion of administrative remedies is a jurisdictional matter and is resolved pursuant to a motion brought under Rule 12(b)(1)." *H.A. v. Teaneck Bd. of Educ.*, No. 09-3301, 2010 WL 891830, at *4 (D.N.J. Mar. 10, 2010). A 12(b)(1) challenge may involve either a facial challenge to subject matter jurisdiction or a factual challenge to the jurisdictional allegations. *Davie v. Barnegat Bd. of Educ.*, No. 09-5769, 2010 WL 1186273, at *2 (D.N.J. Mar. 24, 2010); *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999).

If the defendant's attack is facial—i.e., "asserting that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction"—a court must accept all allegations in the complaint as true. *Iwanowa*, 67 F. Supp. 2d at 438. Alternatively, a defendant may "challenge a federal court's jurisdiction by factually attacking the plaintiff's jurisdictional allegations as set forth in the complaint." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

"A factual challenge attacks the existence of a court's subject matter jurisdiction apart from any of the pleadings" and, when considering such a challenge, "no presumption of truthfulness attaches to a plaintiff's allegations." *Abuhouran v. Fletcher Allen Healthcare*, No. 07-5108, 2009 WL 1834316, at *3 (D.N.J. June 25, 2009) (internal quotations & textual alterations omitted). "An attack on subject matter jurisdiction that is based on a lack of administrative exhaustion is a factual challenge and not a facial one." *J.H. ex rel. J.H. v. Egg Harbor Twp. Bd. of Educ.*, No. 08-488, 2009 WL 1322514, at *2 (D.N.J. May 11, 2009). When reviewing such a factual attack, the Court may consider evidence outside the pleadings. *Id.* at 3.

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

Defendant construes Plaintiff's Complaint as alleging violations of the IDEA's guarantee of free and appropriate public education ("FAPE"). (Def. Mov. Br. at 1). Defendant contends that, "[w]ith specific regard to special education matters, federal and state law and regulation make clear that judicial review under 20 U.S.C. § 1415(i) is not available until the administrative remedies enumerated in § 1415(b) and (f) have been exhausted or a qualifying exception has been proffered and accepted." (*Id.* at 3). Defendant argues that Plaintiff has failed to first seek relief from the Office of Administrative Law ("OAL")—"the forum that has been designated to adjudicate such claims." (*Id.* at 1, 3). Accordingly, Defendant asserts that "this matter is not ripe for consideration by the district court and has been improperly placed before it." (*Id.* at 3).

The IDEA "provides for a 'free appropriate public education' for all handicapped children, 20 U.S.C. § 1412, and establishes an elaborate procedural mechanism to protect the rights of those individuals." *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d. Cir. 1994); *see also S.N. v. Washington Twp. Bd. of Educ.*, No. 11-3876, 2012 WL 4753428, at *1 (D.N.J. Sept. 27, 2012) ("Congress enacted the IDEA as a means to ensure that states follow a mandate to provide a 'free and appropriate education' ('FAPE') to all disabled children."). This Act "instructs states, and by extension local school districts, to develop a detailed instructional plan, known as an IEP, for every disabled child." *D.A. v. Pleasantville Sch. Dist.*, No. 07-4341, 2009 WL 972605, at *4 (D.N.J. Apr. 6, 2009) (citing 20 U.S.C. § 1412(a)(4)).

"Generally, under the IDEA, plaintiffs must exhaust their administrative remedies before proceeding with a civil action in federal court." *Teaneck Bd. of Educ.*, 2010 WL 891830, at *5

(citing 20 U.S.C. § 1415(f)).[1]  Namely, the IDEA provides an opportunity for a due process hearing before an administrative official.  20 U.S.C. § 1415(f).  The due process hearing "offers an opportunity for state and local agencies to exercise discretion and expertise in fields in which they have substantial experience . . . and [thus] provide a means to develop a complete factual record."  *Komninos by Komninos*, 13 F.3d at 779.  Furthermore, the IDEA sets forth administrative procedures for appeal.  20 U.S.C. § 1415(g); *Teaneck Bd. of Educ.*, 2010 WL 891830, at *5 ("20 U.S.C. § 1415(f)-(h) provides for an administrative due process hearing and appeal.").

In fact, generally only those "[p]arties aggrieved by the findings and decision made in the administrative proceedings provided by the Act have the right to bring a civil action in either federal or state court."  *Komninos by Komninos*, 13 F.3d at 778.  More specifically, the IDEA provides that "[a]ny party aggrieved by the findings made under subsection (f) or (k) [of 20 U.S.C. § 1415] who does not have the right to appeal under subject (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action . . . ."  20 U.S.C. § 1415(i)(2)(A).  Thus, "it is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court."  *Komninos by Komninos*, 13 F.3d at 778.

---

[1] Notably, 20 U.S.C. § 1415(l) provides that:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

To be sure, however, there are four exceptions to the exhaustion requirement: "(1) where exhaustion would be futile or inadequate, (2) where the issue presented is purely a legal question, (3) where the administrative agency cannot grant relief, or (4) where exhaustion would work a severe or irreparable harm on a litigant." *MG ex rel. LG v. Caldwell-West Caldwell Bd. of Educ.*, 804 F. Supp. 2d 305, 313-14 (D.N.J. 2011).

In the instant action, Plaintiff does not specifically allege that Defendant violated the IDEA. Indeed, Plaintiff does not identify *any* statutory basis for the instant action. But, given the nature of Plaintiff's allegations regarding specialized education needs and her status as a *pro se* litigant, the Court construes Plaintiff's Complaint as being brought under the IDEA. (Compl. at 5 (attaching document in support of Plaintiff's Complaint characterized as an "IEP"); *see also* 20 U.S.C. § 1412(a)(4) (defining an "individualized education program"); 20 U.S.C. § 1415(a) ("Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies.").

To this extent, Plaintiff's Complaint must be dismissed because Plaintiff has not first sought a due process hearing. *See* 20 U.S.C. § 1415(f). Moreover, Plaintiff has not established futility, existence of a purely legal question, an inability for the administrative process to provide relief, or a threat of severe or irreparable harm. In short, Plaintiff alleges that Defendant failed to provide services specified in C.A.'s IEP. (*See* Compl. at 2). This is precisely the kind of issue that the IDEA requires be addressed first through the administrative process. *See Grieco v. N.J. Dep't of Educ.*, No. 06-4077, 2007 WL 1876498, at *7 (D.N.J. June 27, 2007) ("Courts most

often follow the ordinary rule which states that a factually intensive inquiry into the circumstances of each individual child's case is best resolved with the benefit of agency expertise and a fully developed administrative record.") (internal quotations & textual alterations omitted); *Falzett v. Pocono Mountain Sch. Dist.*, 150 F. Supp. 2d 699, 702 (M.D. Pa. 2001) (explaining that the IDEA's "exhaustion requirement enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy"). Thus, to the extent that Plaintiff's Complaint seeks relief under the IDEA, her Complaint must be dismissed for failure to exhaust administrative remedies.

### B. Service Under the Federal Rules of Civil Procedure

Defendant also argues that dismissal is proper because Plaintiff failed to effect proper service under Federal Rules of Civil Procedure 4(m) and 5(b). (Def. Mov. Br. at 3-4). First, Defendant contends that, although Rule 4(m) permits "up to four months for Plaintiff to effect service . . . following her filing, Plaintiff delayed for <u>double</u> that duration before attempting service" without offering any excuse for such delay. (*Id.* at 4 (emphasis in original)). Second, Defendant argues that Plaintiff failed to properly effect service under Rule 5(b) because "service was not made upon any District attorney, any District office, any District clerk or other office employee, or at any District employee's usual place of abode." (*Id.*). Defendant explains that, instead, "Plaintiff's papers appear to have been given to the first District employee spotted on entering Central Office, resulting in considerable confusion and compromising the District's fair notice and response time." (*Id.*).

The Court finds these arguments unpersuasive. The Court did not grant Plaintiff's *in forma pauperis* application until December 3, 2012 and Defendants were served on January 26,

2013, well within the required 120 day window required by Rule 4(m). *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). The Court likewise finds Defendant's Rule 5(b) argument equally unpersuasive because, as Defendant concedes, its employee received service. *See* Fed. R. Civ. P. 5(b)(2)(B)(i) ("A paper is served under this rule by . . . leaving it *. . .* at the person's office with a clerk *or other person in charge or, if no one is in charge, in a conspicuous place in the office . . . .*") (emphasis added). Nevertheless, the Court must dismiss Plaintiff's Complaint for the reasons detailed above in Section A of this Opinion.[2]

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and Plaintiff's Complaint is dismissed *without* prejudice. The Court grants Plaintiff leave to file an amended complaint—consistent with this Opinion—within 45 days of receiving the accompanying Order.[3]

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[2] The Court notes that, although Plaintiff alleges breach of contract, the Court's analysis regarding exhaustion applies to Plaintiff's Complaint in its entirety. *See Teaneck Bd. of Educ.*, 2010 WL 891830, at *5 ("[P]laintiff must exhaust administrative remedies prior to initiating a lawsuit. Piecemeal appeal of issues in a single case to a federal court is most often inefficient and ineffective."). Indeed, the Court cannot decipher any contractual issue attendant to Plaintiff's Complaint except that relating to C.A.'s IEP.

[3] The Court notes that Defendant improperly included several affirmative defenses *in* its opposition briefing. (*See* Def. Mov. Br. at 4-5). Since the Court dismisses Plaintiff's Complaint, the Court need not reach this issue. Should Plaintiff file an amended complaint, however, Defendant must file its responsive pleading or motion in accordance with the Federal Rules of Civil Procedure and this District's Local Civil Rules.